The opinion of the court was delivered by
Seencer, J.
This case has been argued before us concurrently with that of “ Peterkin vs. Oglesby & Co., and Higby,” just decided, upon the *895 suggestion that they involved substantially the same questions. But, as will be seen in the opinion in that case, we held that the plaintiff had failed to prove satisfactorily that the corn bought of Oglesby was, in fact, at the time of its weighing and delivery unsound.
In the present ease, however, it is shown that, at least, that part of the Martin corn which constituted the last put aboard the vessel was, at its delivery on the fourth and fifth May, in a damaged and heated condition. This lot so last put on board consisted of about 2084 bushels of yellow, and 892 bushels of mixed corn, all belonging to Martin; and this mixed corn was evidently of the same lot of mixed corn that Martin had sold to Peterkin, and of which 5764 bushels had been run aboard with the'Oglesby corn, since it is shown that all of Martin’s mixed corn was kept together in the bins of the elevator. We think the evidence justifies us in concluding that the Martin corn was not, at the, date of its weighing and- being put aboard, in good, sound, merchantable condition.
The evidence shows that the plaintiff at time of contract agreed to pay the market price of good, sound corn, and he was entitled to such an article, unless there are circumstances in this case which vary the rule that a sound price entitles the purchaser to a sound article.
This the defendant contends is the case. He says that on the tenth April he sold the plaintiff all the mixed corn he had in the elevator, being six, seven, or eight thousand bushels, at sixty-five cents per bushel, to be taken away in a few days, and he contends that at that date it is not shown that the corn was unsound. That it was a sale of a determined lot, and that it put the thing at the risk of the purchaser from that date; that the sale was complete and perfect, therefore, on the tenth April. We do not think so. Article 2458, Civil Code, provides: ■“When goods, produce, or other objects, are not sold in a lump, but by weight, by tale, or by measure, the sale is not perfect, inasmuch as the things sold are at the risk of the seller until they be weighed, counted, or measured, etc.” Article 2456,'C. C., declares the sale “to be perfect between the parties, and the property of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, or the price paid.” We apprehend that in a case like this (admitting, for the sake of the argument, it was a purchase of all the mixed corn of Martin in the elevator, though Peterkin seems to deny this),, where the quantity was stated to be between six and eight thousand bushels, at sixty-five cents per bushel, the price was not agreed upon and ascertained in the sense of article 2456. Had. the elevator taken.fire, and the corn been consumed before it was weighed, defendant could not have sued for any specific sum as the ascertained *896 price of the corn. We think the rule of article 2458 governs this case. That by the very terms of that article a sale “ by weight, tale, or measure,” is not a sale “ in lump.” We agree with plaintiff’s counsel that there can be no sale in lump, except for a lumping price. These views, are, we think, in harmony with the jurisprudence of this State. See Goodwyn vs. Pritchard, 10 A. 250, where the precise point is decided. Also, Larue vs. Blair, 10 A. 242; 21 A. 235 and 414. Nothing short of an express agreement, in a case like this, will put the thing before it is weighed at the risk of the buyer. The argument of defendant’s counsel as to the inexpediency or improbability of selling such articles as corn, eggs, butter, etc., subject to the call of the purchaser, can not vary a rule of law, or supply the place of proof that there was an agreement to vary it. It may be that a seller would do a very foolish thing in so doing, but if he does do it, he has no one to blame but himself.
We hold, therefore, that the sale was not perfect until the weighing and delivery (which are contemporary acts at the elevator) on the third and fourth of May.
As we have stated, the evidence satisfies us that the Martin corn was not in good merchantable condition at that time, and was not such an article as the defendant should have delivered. But it was loaded on a vessel which the plaintiff had chartered at heavy cost, and was mixed with other corn before plaintiff discovered its condition. It was impracticable to cancel the sale under these circumstances; and the purchaser had the right to keep the thing, and “ content himself with resorting to ” an action for diminution of the price. C. 0. 2541, 2542. These were the rights of the plaintiff on the fifth of May.
On the eighth of May, after some ineffectual efforts at adjustment, Martin brought suit and sequestered the corn on board ship. On the ninth May Peterkin paid him the full amount demanded, and thereby release! the com from seizure. On the one hand it is contended by Martin that this payment after suit, with full knowledge of the defects of the thing, estops plaintiff from bringing this suit now before us— which was only filed June 5, nearly a month after the payment. On the other hand Peterkin contends that said payment was made under duress and circumstances which deprive it of the character of a voluntary payment. That he had chartered the ship Oaspari, at heavy cost; that she was loaded with 23,000 bushels of corn; that he had borrowed money in bank to- make payments on her cargo, and given bills on London, with the promise to procure and annex the bills of lading; that the ship was on demurrage at a cost of eight pounds sterling per day; that this seizure prevented her sailing, and prevented his getting the bills of lading, and that it would have been ruinous to have awaited the results of a lawsuit. Under these circumstances, he paid the price.
*897 Even if it be true, as contended by defendant’s counsel, that a payment after suit, and in consequence of suit, can under no circumstances be held to have been made under duress (a proposition we are not prepared to unqualifiedly assent to), we think, under the facts of this case, the payment was made with the understanding and agreement that plaintiff’s rights of reclamation were reserved.
The defendant himself in his testimony says that after Ms seizure of the corn Mr. Chism came to him on behalf of Mr. Peterkin, and proposed to leave the matter.to arbitration; and that if he consented, Peterkin would -at once pay the money, which defendant assented to. He says in another place that the proposition he accepted was “ that the bill should be paid, and the matter left to arbitration.” Chism substantially confirms these statements of Mártin. Peterkin paid the amount of the defendant’s bill on the ninth May. Under these circumstances, and in view of the strong equities of the plaintiff’s claims, we are not disposed to enforce a doubtful and harsh rule which would cut off all right of reclamation.
The plaintiff’s right of reclamation being determined, the next question is the extent of defendant’s liability. Is he liable only for the difference between the value of the corn delivered and that of a sound article, at the time and place of sale ? Or, also, for the damages suffered by plaintiff by delay and expenses of unloading the ship and passing the corn through the elevator again and reloading it, as well as for expenses of surveys here and in Ireland, loss on resale in Ireland, shrinkage, freights, etc.
The rule is that, where there is no fraud or bad faith, failure to comply with a contract renders the party liable only for such damages as the parties must have reasonably foreseen as the direct and immediate consequences of the breach.
It results from article 2545, C. C., that a vendor ignorant of the vices of the thing sold is not responsible in damages, but only to restitution or diminution of the price and repayment of expenses connected with the sale.
Now it is not shown satisfactorily that Martin even knew that this corn was bought for shipment to Europe, or for other long voyage. Peterkin says Martin was informed it was to be shipped, but does not say where. Martin denies that he knew any thing about its destination. There is no pretense of proof that Martin knew any thing of the unsoundness of the corn, or was in any way guilty of concealment, deceit, or fraud.
“In cases of this sort, where the seller is not cognizant of the hidden defects of the thing sold, he is liable for the difference, at the time and plctce of sale, between the actual value ” of the thing sold, and *898 what it “ would have been worth ” if it had. been a sound article. “ The actual loss incurred by plaintiff in'the foreign market where he sold the thing * * * is not the rule of damages, although it may be considered with other evidence for the purpose of estimating the per centage of’inferiority.” Fuller vs. Cowell, 8 A. 136; see, also, 1 A. 27; 2 A. 67; 7 A. 613.
We think the rule, as stated above by Eustis, C. J., in Fuller vs. Cowell, is correct, and we shall apply it to this case.
In this record there is no very satisfactory proof of what was the value of this corn delivered to plaintiff by defendant at the time and place of sale, to wit, New Orleans, May 5, 1871. In the case of Peterkin vs. Oglesby, above referred to, the evidence on this subject is more full and satisfactory; but we can not regard that evidence in this case. The testimony taken in England shows that the com was sold there at a loss of about twenty-five cents per bushel. Plaintiff in his original petition in this case alleges that it was worth about fifty cents per bushel here. That petition was filed about a month after the sale. We think that in the interest of all parties this litigation should, if possible, be now terminated ; therefore, we will adopt fifty cents per bushel as the actual •value of the com delivered on May 5, 1871, in New Orleans. This would make a difference of fifteen cents per bushel; the corn having been bought at sixty-five cents. The number of bushels sold was 8735 41-56, which, at fifteen cents, amounts to 51310 35, for which we think plaintiff should have judgment. We allow nothing to plaintiff for the unloading and re-elevating the corn to fit it for sea voyage, because the evidence does not satisfy us that defendant knew plaintiff’s purposes in buying, and could not, therefore, have foreseen this expense.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided and reversed, and it is now ordered and decreed that plaintiff, William S. Peterldn, do recover of the defendant, George Martin, 51310 35, with legal interest from seventh day of June, 1871, till paid, and costs of both courts.